989 So.2d 241 (2008)
The ESTATE OF Harvell J. WALKER, Sr., et al., Plaintiff-Appellees
v.
D.R. PETERS, II, Defendant-Appellant.
No. 43,357-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*242 Mulhearn and Smith by Leroy Smith, Jr., Tallulah, for Appellant.
Davenport, Files & Kelly, L.L.P. by Michael J. Fontenot, Mike Charles Sanders, Monroe, for Appellee.
Before PEATROSS, MOORE and LOLLEY, JJ.
MOORE, J.
This case involves a dispute between the heirs of co-owners of a vintage WW II Stearman aircraft. The defendant, D.R. Peters, appeals the judgment of the trial court finding that the Estate of Harvell J. Walker is a co-owner of the airplane. We find no error in the judgment of the trial court and therefore affirm at appellant's cost.

Facts
The aircraft in dispute in this case was purchased in 1964 by three gentlemen, Harvell J. Walker, Sr., D.R. Peters, Sr. and John D. Johnson. Later, Johnson transferred his interest to Walker and Peters, who each held an undivided one-half interest in the plane. The plane remains registered to both men. The dispute, however, is not between the two registered owners, who are now deceased, but between *243 the Succession of Harvell J. Walker, Sr., represented by Harvell J. Walker, Jr. and D.R. Peters, Sr.'s son, D.R. Peters, II.
Walker, Sr. had possession of the plane from 1972 until 1992. The trial court found that during that time, Mr. Walker maintained and restored the plane at his own expense and otherwise paid all expenses associated with the plane. Although in 1983 the aircraft passed an "airworthiness" inspection, in 1984, the plane was disassembled for restoration. Walker never commenced the restoration however.
In 1992, Peters, Sr. took possession of the disassembled plane and undertook the restoration in Richland Parish. Restoration was finally completed in 1996 at a cost, according to the trial court, of $75,000. Peters, Sr. paid $55,000 of this and his son, D.R. Peters, II, paid $20,000 to finish the restoration. The plane remained in possession of the Peters family for the decade following restoration.
Walker, Sr. passed away in July of 2004. According to his petition, Walker Jr., the succession representative, made numerous attempts to contact Peters, II (Peters, Sr. had also passed away) regarding the whereabouts of the plane, but to no avail. This suit followed in which Walker, Jr. sought a declaratory judgment regarding their ownership and, if necessary, partition by licitation and damages.
Peters, II answered the suit denying that Walker, Jr. and the heirs had any ownership in the plane, and filed a reconventional demand alleging that since the restoration costs far exceeded the value of the disassembled plane, which he alleges consisted of the engine and airframe and was valued at $20,000, the court should recognize him as owner and make him pay Walker, Jr. $10,000 only. He also alleged that there was an oral agreement in 1992 between the owners that Peters, Sr. should take the plane and restore it, and when Walker, Sr. died, the plane would belong solely to Peters.
After a bench trial, the district court ruled that, based on the evidence and lack of evidence of a 1992 oral agreement, there was an agreement by custom between Walker, Sr. and Peters, Sr. that whoever had possession of the plane would also maintain it without charging the non-possessor co-owner. Both sides had maintained possession of the plane for about the same duration of time, twelve years, and each side had expended about the same resources on the plane during their respective possessions.
The court also found that both parties were co-owners in indivision of the aircraft. The parties could obtain partition by licitation, or sell their own interest to the other or a third party. Meanwhile, the defendant was allowed to maintain possession so long as he maintained insurance on the plane. All storage, maintenance and insurance costs were to be borne equally by the parties thereafter. Costs of the proceedings were split equally.
Peters, II filed this appeal. He alleges that the trial court erred in failing to follow the Civil Code articles on accession in relation to movables. Alternatively, Peters, II alleges that Walker, Jr. and the other heirs are unjustly enriched by the court's ruling. He contends that the maximum value of the plane as it existed in 1992 was $20,000. Now, after the $75,000 restoration, the defendant contends the plane is now worth $90,000 to $100,000. Thus, he urges that the Walkers are getting a windfall.

Discussion
By his first assignment of error, the appellant alleges that the trial court erred as a matter of law by not finding that the value of the repairs and restoration of the aircraft was much greater than the aircraft *244 in 1992 when his father took possession, and that the Peters family should be obligated to pay the Walker family only one-half the value of the aircraft in 1992. Appellant contends that in 1992, the disassembled aircraft, which consisted of the engine and airframe, was worth, at most, $20,000. The court found that the appellant's family spent approximately $75,000 restoring the plane. Accordingly, they contend that because the cost and value of the restoration far exceeded the value of the airframe and engine, the Walker family is entitled to only a percentage equal to one-half the value of the engine and airframe in 1992, relying upon some of the Civil Code articles concerning accession, C.C. art. 507, et seq.
We observe first that the Walkers and Peters were correctly determined by the trial court to be co-owners of the airplane. La. C.C. arts. 797 & 480. Ownership and possession of a thing are distinct concepts, and ownership exists independently of any exercise of it and may not be lost by nonuse. La. C.C. art. 481. Ownership of a thing includes by accession the ownership of everything that it produces or is united with it, either naturally or artificially. La. C.C. art. 482.
In this instance, the evidence showed that title to the aircraft was in the name of "Harvell J. Walker and D.H. Peters, II, a Partnership." Walker paid for restoration of the airplane in the early 1970s while it was in his possession from 1972 until 1992. Although the aircraft was airworthy in 1983, it was disassembled in 1984, probably to replace the fabric skin of the plane, and remained in that condition until Peters took possession in 1992. Peters, Sr. and his son had the airplane restored at their expense. The work was completed in 1996, and the Peters have remained in possession of the plane since that time, or approximately 11 or 12 years.
Based upon the articles governing ownership and the facts of the case, it is clear that Walker and Peters were co-owners in indivision of the airplane and any improvements thereon. We do not agree with the appellant, however, that the articles governing accession in relation to movables that are used to create a new thing, namely articles 513, 514, and 516, apply in this case directly or by analogy. (Emphasis ours). There is a significant difference between combining materials to make a new thing and restoring a thing in disrepair to "like new" condition. For example, these Civil Code articles on accession in relation to movables apply in circumstances where one combines the lumber or wood owned by another with his own labor and materials to create a piece of furniture. In this instance, Walker, Sr. and Peters, Sr. had undivided ownership of the airplane that had been stripped of its fabric skin and disassembled. Peters and his son did not create a new thing, but merely restored the airplane, albeit a significant and costly undertaking in the 1990s. This restoration did not change the essential nature of the airplane. While it is true that Peters and his son paid for the labor and materials to restore the airplane, when those materials were incorporated into the airplane, they became subject to the rules governing ownership in indivision. The question is, then, what rights does the appellant have regarding his expenditures for restoration of the airplane under the Civil Code articles governing co-ownership.
Ownership of the same thing by two or more persons is ownership in indivision. La. C.C. art. 797. The proportion of ownership of co-owners is presumed to be equal, unless by juridical act or other provisions of law they are shown to be unequal shares. Id. The use and management of a thing held in indivision is *245 determined by agreement of the co-owners. La. C.C. art. 801. When there is no such agreement between the co-owners and partition is not available, a court may determine the use and management of the thing. La. C.C. art. 803.
In this case, the course of dealing between Walker, Sr. and Peters, Sr. regarding the maintenance and upkeep of the aircraft evidenced an agreement between the co-owners, as found by the trial court, that whoever had possession would maintain the aircraft at his expense. In this case, during his possession of the aircraft, Walker, Sr. restored and maintained the aircraft in the early 1970s in substantially the same manner as did the Peters family in the mid-1990s. According to the testimony of Pete Jones, who had restored and sold 138 of these aircraft during the time period involved in this case, the airplane in this case was restored in 1972 by Mid-Continental, and the work performed was essentially the same as the 1990's restoration, except the engine was replaced in 1972 and again in 1975. In the 1992-96 restoration, Jones rebuilt the engine that was put in the plane in 1975. The plane was apparently airworthy before it was disassembled in 1984, but Mr. Jones opined that the fabric might have needed to be replaced. Mr. Jones also testified as to the considerable differences in costs of restoration in the 1970s as opposed to the 1990s, as well as the substantial differences between the value of the aircraft in the 1970s and 1990s. Thus, although the costs of restoration to Walker was substantially less than the cost of restoration to the Peters, the value of Stearman aircrafts also increased substantially.
A co-owner may without the concurrence of any other co-owner take necessary steps for the preservation of the thing that is held in indivision. La. C.C. art. 800. Substantial alterations or substantial improvements to the thing held in indivision may be undertaken only with the consent of all the co-owners. La. C.C. art. 804. When a co-owner makes substantial alterations or improvements without the express or implied consent of the other co-owners, his rights are determined by the Civil Code articles on accession in relation to immovables, i.e. articles 496 and 497. Id.[1]
In this case, we cannot conclude that the trial court was clearly wrong or erred as a matter of law when it concluded that the co-owners of this aircraft had an implied agreement that the person in possession of the aircraft was responsible for the costs to maintain it. Civil Code art. 806 states that a co-owner who on account of the thing held in indivision has incurred necessary expenses or expenses for ordinary maintenance and repairs is entitled to reimbursement from the other co-owners in proportion to their shares. However, if the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment. Id. In this case, it is not necessary to ascertain whether their possession and enjoyment of the aircraft from 1996 until the present would offset any reimbursement the Peters family claims because the prior course of dealing between Walker and Peters created an implied agreement that the person in possession *246 would be responsible for the costs. La. C.C. art. 801.
Accordingly, this assignment of error is without merit.
By his second assignment of error, appellant argues that the judgment of the trial court resulted in an unjust enrichment of the heirs of Walker, Sr. We disagree.
The jurisprudence is settled that there are five prerequisites for an action for unjust enrichment, as enumerated in Kirkpatrick v. Young, 456 So.2d 622 (La. 1984), at 624:
"... 1) [T]here must be an enrichment, 2) there must be an impoverishment, 3) there must be a causal relationship between the enrichment and the impoverishment, 4) there must be an absence of justification or cause for the enrichment or impoverishment, and 5) there must be no other remedy at law...."
In our view, there are at least three prerequisites missing in this case for a claim of unjust enrichment. First, the alleged enrichment is actually due to the increased value of vintage Stearman aircrafts and restoration costs in recent years compared to the 1970s. Because of their undivided co-ownership in the aircraft, which is also an investment in the aircraft, the Walkers are entitled to reap the benefit of the aircraft's appreciated value just as they would had their co-ownership involved land or stock. Second, although the Peters expended their funds to restore and maintain the aircraft from 1992 until the present, they also had the possession and enjoyment of the aircraft subsequent to the restoration but still co-owned by Walker. The justification or cause for the alleged "enrichment and impoverishment" can thus be explained by the implied agreement evidenced by the course of dealing between Walker and Peters. Finally, Peters had a legal remedy he did not seek before undertaking the restoration of the aircraft. He could have sought partition of the ownership of the plane.
For these reasons, this assignment is without merit.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] These Civil Code articles concern accession in relation to immovables where substantial improvements have been made to immovable property without the consent of the co-owner or against the objections of the co-owner. These articles, or perhaps arts. 511, 513 and 514 regarding accession in relation to movables, as urged by the appellant, might apply in this case were there no implied agreement evidenced by the prior course of dealing between the co-owners or partners.